IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| RICHARD TRAGLIO, JR., | ) | Civil No.: 3:12-cv-01349-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

       Merrill Schneider
       Schneider Kerr Law Offices
       PO Box 14490
       Portland, OR 97293

             Attorney for Plaintiff

       S. Amanda Marshall, U.S. Attorney
       Adrian L. Brown, Asst. U.S. Attorney
       1000 S.W. 3rd Avenue, Suite 600
       Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Daphne Banay
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Richard Traglio, Jr. brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, Plaintiff seeks an Order remanding the action to the Agency "for a fair hearing."

For the reasons set out below, the Commissioner's decision should be reversed and the action should be remanded for an award of benefits for a closed period.

### Procedural Background

Plaintiff filed applications for DIB and SSI on March 13, 2008, alleging that he had been disabled since December 14, 2004 because of a congenital "clubfoot" deformity and a learning disability.

After his claims had been denied initially and on reconsideration, Plaintiff timely requested an administrative hearing.

On April 27, 2010, a hearing was held before Administrative Law Judge (ALJ) Richard Say. Plaintiff; Plaintiff's father, Richard Traglio, Sr.; and Erin Martz, a Vocational Expert (VE); testified at the hearing.

FINDINGS AND RECOMMENDATION - 2

In a decision filed on May 6, 2010, ALJ Say found that Plaintiff was not disabled within the meaning of the Act. Plaintiff requested review by the Appeals Council, which granted the request and remanded Plaintiff's applications to the Agency for further proceedings.

During a second hearing, held before ALJ Say on November 8, 2011, Plaintiff requested a closed period of disability from September 1, 2007, through April 15, 2011.

On November 23, 2011, ALJ Say issued a decision finding that Plaintiff had not been disabled during the period of disability alleged. That decision became the final decision of the Commissioner on May 22, 2012, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on June 20, 1980, and was 31 years old at the time of the ALJ's most recent decision. He attended special education classes and attended high school through the 10th grade. Though Plaintiff's earnings history is sufficient to extend his insured status through December 31, 2012, he has no past relevant work experience.[1]

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

---

[1] In his first decision, ALJ Say found that Plaintiff had past relevant work experience as a cashier and small products assembler. In its Order granting Plaintiff's first request for review, the Appeals Council instructed the ALJ to consider as past relevant work only Plaintiff's jobs that satisfied the requirements of 20 C.F.R. §§ 404.1565 and 416.965. In his second decision, the ALJ found that Plaintiff had no past relevant work.

FINDINGS AND RECOMMENDATION - 3

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of

jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  <u>Id.</u>

## **<u>Medical Record</u>**

Plaintiff was born with a club foot, for which he had surgery when he was 7 months old.  His affected foot was put in a cast, and he wore a brace during much of his childhood.  Plaintiff's left leg is approximately ½ inch shorter than his right leg.  Plaintiff has had knee surgery, and had a lumbar laminectomy to relieve nerve root compression in 2008.  He continues to have pain in his back which is exacerbated by standing and ambulating.  The medical record shows a history of the use of substantial amounts of pain medication, and Plaintiff was taking prescribed morphine at the time of the second hearing before the ALJ.

Plaintiff attended both regular and special education classes, and had a grade point average of 1.46 when he left school after the tenth grade.  He has experienced periods of depression, and has taken prescribed antidepressants at times.

Dr. Kelly Callahan, Plaintiff's treating physician, completed a form  dated April 15, 2010, summarizing Plaintiff's functional capacity.  Dr. Callahan indicated that he had been Plaintiff's family doctor for 10 years, and that Plaintiff's diagnoses included chronic foot and

FINDINGS AND RECOMMENDATION - 5

back pain, congenital foot deformity with leg length disparity, a learning disorder, reflux, hypertension, and depression.  He opined that Plaintiff could occasionally lift or carry 20 pounds, and could not lift or carry any weight frequently.  Dr. Callahan opined that Plaintiff could stand for 3 hours and could sit for 4 hours during an 8 hour workday, needed to elevate his feet every two hours, and would need to alternate between sitting, standing, and/or lying down every two hours to relieve pain.  He opined that Plaintiff could never climb, balance, stoop, bend, kneel, crouch, or crawl; experienced pain that would interfere with the concentration needed to perform simple work tasks; had symptoms which would increase in a competitive work environment; and would miss even a simple, routine, sedentary job more than twice per month because of his symptoms and the side effects of his medications.

## **Plaintiff's Testimony**

Plaintiff testified as follows at the first hearing before the ALJ.

Though surgery in 2008 relieved some of the numbness in his left leg, Plaintiff continued to experience back pain.  Plaintiff's club foot, which had caused him to need knee and back surgery, was his most significant impairment.  The difference in leg length caused added stress on Plaintiff's knees and hips, and Plaintiff had been told that he would need more surgeries in the future.

Plaintiff had worked through a temporary employment agency in 2006.  He had performed "production" jobs that required him to stand, which was difficult for him because of the difference in the lengths of his legs.  The medications he took to manage his pain made it difficult to concentrate and remain coherent.  Transitions from sitting to standing are difficult for Plaintiff.

FINDINGS AND RECOMMENDATION - 6

Plaintiff had earned nearly $3,000 working in a "video lottery deli" during the first quarter of 2009. He had been working for a friend, who had charitably terminated him because he saw how much pain he was enduring.

Plaintiff did not want to be "on Social Security forever." Instead, his doctors had told him that there were "things they could do" for him, and he wanted to "get fixed" and attend school or develop a career.

Plaintiff took Percocet for his pain and Prilosec for acid reflux. Pain caused his elevated blood pressure. He could purchase medication because he was receiving unemployment benefits, and he lived with his parents who helped him as much as they could.

Plaintiff is able to drive, shop, and prepare simple meals that do not require him to be on his feet for long periods. He is "very computer illiterate." When sitting, he must reposition himself frequently, and he becomes uncomfortable after standing for a few minutes. The difference in his leg length causes pain from Plaintiff's ankles to his back, and he cannot walk around a block before needs to take a break. Plaintiff had been fitted with lifts for his shoes, which had been helpful for a time before his back surgery, but the lift sizes were  not correct after the surgery and Plaintiff did not have the "hundreds of dollars" that replacements cost. Plaintiff also needed rehabilitation therapy.

Plaintiff testified as follows at the second hearing.

Plaintiff's most significant impairment is his left foot, and he continues to have pain in his left foot and in his back. Standing is difficult. Plaintiff is employed at a liquor store, where he works at a cash register 5 to 5 ½ hours a day. He stands most of the time,  sometimes leans on the register for support, and uses a cane 4 or 5 times a month–when the pain is "really bad ." He usually takes three, 15 minute breaks, and is allowed additional breaks if needed.  Plaintiff

could not work full-time at his job because he could not stand all day.

Plaintiff's pain medication had been changed from Percocet to morphine. His doctor had discontinued his morphine prescription for a short time, but had restarted it, with Plaintiff on a "pain contract." Morphine is more effective in controlling Plaintiff's pain, but sometimes causes grogginess.

### ALJ's Decision

The ALJ first found that Plaintiff met the "insured status requirements" of the Act through December 31, 2012.

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from September 1, 2007 through April 15, 2011.

At the second step, the ALJ found that, during the period of alleged disability, Plaintiff's severe impairments included a congenital clubfoot deformity, status post lumbar laminectomy in 2008, a discrepancy in leg length, status post left ankle injury with degenerative arthritis in the left ankle, and a learning disorder that affected Plaintiff's spelling and writing.

At the third step, the ALJ found that, during the period of alleged disability, Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC) between September 1, 2007, and April 15, 2011. He found that, during that period, Plaintiff had retained the capacity to perform sedentary exertional level work, subject to the following limitations. He had the ability to read and the "limited ability to write due to spelling problems;" was capable of "at least simple arithmetic;" could stand and walk up to two hours during an eight-hour work day and could sit for the remainder of the day; could occasionally lift up to 10 pounds and could

FINDINGS AND RECOMMENDATION - 8

frequently lift less than that amount; could never climb ladders, ropes, or scaffolds; could never

crawl; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and operate foot

controls; needed to change positions from sitting to standing every 45 minutes to an hour;

needed to avoid even moderate exposure to extreme cold; needed to avoid concentrated exposure

to fumes, odors, dusts, gases, and hazards; and was limited to performing unskilled work and

routine tasks.  In determining Plaintiff's RFC, the ALJ found that Plaintiff was not entirely

credible.

At the fourth step of his disability analysis, the ALJ found that Plaintiff had no past

relevant work.

At the fifth step, the ALJ found that Plaintiff could perform jobs that existed in

significant numbers in the national economy during the period of alleged disability.  Based upon

the testimony of the VE, as examples of that work, the ALJ cited small products assembler and

cashier II positions.  Because he concluded that Plaintiff could perform this work during the

period of alleged disability, the ALJ denied Plaintiff's applications for benefits during that

period.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala,

66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears

the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991),

FINDINGS AND RECOMMENDATION - 9

and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in rejecting Dr. Callahan's opinion as to the severity of his functional limitations and failed to accurately evaluate his RFC.

### 1. Rejection of Dr. Callahan's Opinion

As noted above, Dr. Callahan, Plaintiff's treating physician, submitted a form dated April 15, 2010, summarizing Plaintiff's functional capacity.  He opined that Plaintiff could occasionally lift or carry 20 pounds, but could not lift or carry any weight frequently.  Dr. Callahan opined that Plaintiff could stand for 3 hours and could sit for 4 hours during an 8 hour workday, needed to elevate his feet every two hours, and would need to alternate between sitting, standing, and/or lying down every two hours to relieve pain.  He opined that Plaintiff could never climb, balance, stoop, bend, kneel, crouch, or crawl; experienced pain that would interfere with the concentration needed to perform simple work tasks; experienced symptoms that would

FINDINGS AND RECOMMENDATION - 10

increase in a competitive work environment; and would miss even a simple, routine, sedentary

job more than twice per month because of his symptoms and the side effects of his medications.

A. **Support Required for Rejecting Treating Physician's Opinions**

Because treating physicians have a greater opportunity to know and observe their

patients, their opinions are given greater weight than the opinions of other physicians.

Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  An ALJ must provide clear and

convincing reasons supported by substantial evidence in the record for rejecting a treating

physician's uncontroverted opinions.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  An ALJ

must provide "specific, legitimate reasons . . . based upon substantial evidence in the record" for

rejecting opinions of a treating physician which are contradicted.  Magallanes v. Bowen, 881

F.2d 747, 751 (9th Cir. 1989) (citations omitted).

B. **Analysis**

The ALJ gave "little weight" to Dr. Callahan's opinion as to Plaintiff's RFC because he

found that it was "inconsistent with his treatment records and the record as a whole."  He did not

cite any particular treatment records which he found inconsistent with Dr. Callahan's opinion or

specify any inconsistencies between Dr. Callahan's RFC assessment and "the record as a

whole."

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons, which

were supported by substantial evidence, for rejecting Dr. Callahan's opinion.  The Commissioner

contends that the ALJ's terse rejection of Dr. Callahan's RFC assessment must be considered in

light of other portions of the ALJ's opinion, including other references to Dr. Callahan's records,

and argues that the ALJ provided "specific and legitimate" reasons for rejecting Dr. Callahan's

opinion.

Because both Plaintiff and the Commissioner have addressed the ALJ's reasons for rejecting Dr. Callahan's opinion under the less stringent "specific and legitimate" rather than the more demanding "clear and convincing" standard, I must assume they agree that Dr. Callahan's RFC assessment was contradicted by the opinion of another treating or examining doctor. However, in a careful review of the medical record, I have not found another opinion of such a doctor that can be fairly characterized as inconsistent with  Dr. Callahan's opinion.[2]  Dr. Troy Simmons, who examined Plaintiff once in 2007 and once in 2009, submitted a functional assessment that was arguably slightly less restrictive than Dr. Callahan's assessment.  However Dr. Simmons, like Dr. Callahan, opined that Plaintiff was significantly impaired.  His opinion did not differ enough to truly contradict Dr. Callahan's opinion and  the ALJ rejected it, like Dr. Callahan's opinion, as overly restrictive of Plaintiff's capabilities.

I am satisfied that the ALJ was required to support his rejection of Dr. Callahan's opinion with clear and convincing reasons which were supported by substantial evidence in the record. However, this conclusion does not affect the appropriate disposition of this action because the ALJ's reasons do not satisfy even the less rigorous "specific and legitimate" test.

The ALJ's assertion that Dr. Callahan's opinion was inconsistent with unspecified "treatment records" and unidentified evidence in "the record as a whole" is not specific enough to satisfy the less demanding standards that apply to contradicted opinions of a treating physician.  In any event, I note that in a careful examination of Dr. Callahan's treatment records, I have found nothing that is inconsistent with Dr. Callahan's ultimate conclusion that Plaintiff

---

[2]The ALJ gave greater weight to the opinions of non-examining Agency doctors who concluded that Plaintiff was substantially less impaired than indicated in Dr. Callahan's assessment.  However, the opinions of non-examining Agency doctors do not constitute "substantial evidence" that would support rejection of a treating physician's opinion.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (opinion of non-examining physician does not constitute "substantial evidence" supporting rejection of treating physician's opinion).

was severely impaired and would likely miss enough work because of his impairments to preclude competitive employment during the closed period for which Plaintiff seeks disability benefits.  In his treatment records, Dr. Callahan repeatedly noted Plaintiff's intractable pain, cited objective evidence that Plaintiff's pain was caused by Plaintiff's impairments, and referred Plaintiff to a number of specialists in an attempt to lessen his pain and improve his functional capacity.

The ALJ's assertion that Dr. Callahan's opinion was inconsistent with the record as a whole lacked both the specificity and the support of substantial evidence in the record required to reject this treating physician's opinion.  In the absence of the ALJ's identification of which portions of the "record as a whole" he considered inconsistent with Dr. Callahan's opinion, the Commissioner now cites the ALJ's discussion of Plaintiff's activities of daily living and ability to work part-time as a cashier at the time of the second hearing as evidence supporting the conclusion that Plaintiff was not as impaired as Dr. Callahan thought.

Even if I could properly speculate as to what evidence in the lengthy administrative record the ALJ considered inconsistent with Dr. Callahan's opinion, the evidence now cited by the Commissioner is not substantial and does not support rejection of Dr. Callahan's opinion. The ALJ listed a number of Plaintiff's activities of daily living in support of his credibility finding, a matter that is not at issue in this action.  These included caring for Plaintiff's son three days per week, caring for his dog, preparing simple meals, performing household chores, mowing the lawn, using public transportation, shopping in stores, performing personal care activities, and occasionally engaging in activities such as moving furniture, camping, and hiking. Though the record does indicate that Plaintiff engaged in these activities, nothing in the reports concerning the manner in which he performed them supports the conclusion that Plaintiff's

impairments were less severe than Dr. Callahan had opined.  Instead, the record consistently indicated that, during the period in question, Plaintiff's ability to carry out these activities was significantly restricted in pace and duration, that Plaintiff could perform some of these activities in only a sporadic and limited manner, and that Plaintiff experienced significant pain while and after he performed them.  Nothing in the record of Plaintiff's activities was inconsistent with Dr. Callahan's opinion that Plaintiff could not be on his feet for long periods of time, needed to change positions frequently, would experience exacerbations of impairments during sustained work in a competitive environment, and would likely miss work at least two days a month because of his impairments and the side effects of his medications.

In addition, Plaintiff's ability to work part-time after the closed period for which he seeks benefits had ended is not inconsistent with the functional limitations set out in Dr. Callahan's opinion for several reasons.  First, though the ALJ asserted that there is no evidence that Plaintiff's medical condition had improved after Dr. Callahan assessed his functional capacity, the record includes evidence that changes in Plaintiff's pain medications after Dr. Callahan had submitted his assessment  contributed to better management of Plaintiff's pain.  Second, Plaintiff's ability to work part-time after Dr. Callahan submitted his functional capacity assessment is of little relevance in light of evidence that Plaintiff's employer provided significant accommodations,  including additional breaks as needed, which would not likely be available in most competitive work environments, and which Dr. Callahan could not have anticipated or accounted for in his assessment.  Moreover, it is not clear that, absent those accommodations, Plaintiff's would have been able to sustain even part-time employment.  Finally, when all the regular and supplemental breaks which Plaintiff's employer allowed are considered, it appears that the cashier job that Plaintiff performed after the closed period for which he sought benefits

FINDINGS AND RECOMMENDATION - 14

did not require an ability to stand or walk that differed significantly from that to which Dr. Callahan opined. Even if Plaintiff's ability to perform his cashier job were directly relevant to a period of time for which Plaintiff seeks benefits, the minor discrepancy between the length of time Dr. Callahan opined Plaintiff could stand and the time he actually stood during his work as a cashier would not render Dr. Callahan's opinion inconsistent with "the record as a whole."

C. **Appropriate Disposition of the Action**

Where, as here, an ALJ fails to provide adequate reasons for its rejection, the opinion of a treating physician is credited as a matter law. Lester, 81 F.3d at 834. Remand for an award of benefits is then appropriate if the record is fully developed, and it is clear that a finding of disability would be required if the improperly rejected evidence were accepted. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). Here, remand for an award of benefits is appropriate because the record is fully developed and a finding is disability during a closed period is required if Dr. Callahan's opinion is accepted. In the absence of adequate reasons for rejecting that opinion, the ALJ's conclusion that Plaintiff could work during the closed period for which he seeks benefits lacked substantial support.

 2. **ALJ's RFC Evaluation**

My conclusion that this action should be remanded for an award of benefits for other reasons makes it unnecessary to reach the second issue that Plaintiff has raised. Nevertheless, I will briefly address it in order to create a full record for review.

In the RFC assessment in his first decision, the ALJ stated that Plaintiff "has some limitations in spelling and writing." In its Order remanding the action following Plaintiff's request for review, the Appeals Council stated that the limitation was "not adequately expressed

in work-related terms because it does not define what is meant by 'some limitations.'  Further

evaluation of the claimant's learning disorder and his residual functional capacity is necessary."

On remand, the ALJ altered his RFC evaluation slightly, stating that Plaintiff had "the

ability to read and the limited ability to write due to spelling problems."  Plaintiff contends that

this modified RFC "is still an unclear, vague limitation, merely a re-phrasing of the original

RFC."  He notes that the ALJ provided no further explanation of his "limited ability to write,"

and asserts that there is no way to know how the VE interpreted this limitation.  Plaintiff argues

that, in the absence of a more specific description of his ability to read and write, the VE's

testimony that he could perform the jobs identified does not constitute substantial evidence that

he could perform "other work" at step five of the disability analysis.

The Commissioner now concedes that the ALJ "mistakenly included [the reading and

writing limitation] as part of his residual functional capacity finding" because the RFC

assessment "is a separate category, distinct from the vocational factor of education."  She

contends that this error was harmless because an RFC finding "is a separate category distinct

from the vocational factor of education" which in turn "has its own characteristics that are

considered."  Defendant's Memorandum at 11 [citations omitted].  The Commissioner further

asserts that, though Plaintiff contends that the jobs identified by the VE required a higher level of

language proficiency than he had attained, he failed to "provide any specific legal authority in

support of his general assertion" that the jobs identified by the VE required language skills that

he had not acquired.  Id. at 13.  She contends that the ALJ properly relied on the VE's testimony

that an individual with Plaintiff's education could perform the kind of unskilled jobs the VE

identified as within the functional capacity of an individual with Plaintiff's characteristics.  Id.

at 14.

FINDINGS AND RECOMMENDATION - 16

In evaluating the sufficiency of the ALJ's vocational hypothetical, I need not determine the significance of the distinction between RFC assessments and "the vocational factor of education" on which the Commissioner now relies, or determine whether Plaintiff has sufficiently supported his assertion that the jobs that the VE identified at step five required language skills that he did not possess.  Regardless of where it fits into the disability analysis, there is no question that a claimant's ability to communicate is important in determining what jobs a claimant can perform.  See Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (though unclear under the regulations at which step ALJ should have considered it, communication skill is important factor in determining what jobs are available).

In evaluating the ALJ's description of Plaintiff's written language skills, the Appeals Council's Order remanding the action to the ALJ is instructive.  As noted above, the Appeals Council concluded that an RFC noting  "some limitations in spelling and writing" lacked necessary "work-related terms" because the limitations were not defined.  On remand, the ALJ stated that Plaintiff's ability to write was "limited due to spelling problems."  This description does not differ materially from the original description which was found insufficient: The latter description, like the former, notes limitations in spelling, but is too vague to allow for accurate assessment of the effect of those limitations on work-related activities.  Accordingly, if I were not recommending that this action be remanded for a payment of benefits for a closed period of disability on other grounds, I would recommend that the action be remanded for further clarification of Plaintiff's language limitations and the effect of those limitations on his ability to perform "other work."

**Conclusion**

For the reasons set out above, a Judgment should be entered REVERSING the Commissioner's decision and REMANDING this action to the Agency for an award of benefits for a closed period of disability beginning on September 1, 2007 and ending on April 15, 2011.

## **Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due July 8, 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 19th day of June, 2013.


          /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge